IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| v. | ) | | |
| | ) | | |
| CRAIG STANFORD EURY, JR., | ) | Case Nos. | 1:14-CR-39-1 |
| HARRY LEE WICKER, JR., and | ) | | 1:14-CR-39-4 |
| KENNETH W. WHITE, | ) | | 1:14-CR-39-5 |
| | ) | | |
| Defendants. | ) | | |
| | ) | | |

## DEFENDANTS' MOTION TO DISMISS COUNT ONE

Defendants Craig Stanford Eury, Jr., Harry Lee Wicker, Jr., and Kenneth W. White ("Defendants"), by and through counsel and pursuant to Fed. R. Crim. P. 12(b)(3), respectfully move the Court to Dismiss Count One of the Second Superseding Indictment.

## INTRODUCTION

Count One is a strained attempt to transform several unrelated substantive offenses (those charged in Counts Two through Eighty-Seven) into a single overarching conspiracy.[1] That approach on its face defies the grand jury's own factual allegations and common sense. Even taking the allegations as true, Count One alleges a series of distinct schemes that properly may be charged only as separate conspiracies in separate

---

[1]   To avoid confusion, Defendants have cited to the specific counts in the indictment, rather than simply using paragraph numbers, since each successive count of the eighty-seven count indictment begins anew with paragraph number 1.

Indictments. Because the doctrine of duplicity forbids the pleading of multiple conspiracies within a single count, Count One should be dismissed.

## BACKGROUND

The grand jury returned an eighty-seven count, Second Superseding Indictment against Defendants Eury, White, and Wicker on September 30, 2014 (the "Indictment"). The Indictment identifies several entities and individuals allegedly involved in this case:[2]

**International Labor Management Corporation ("ILMC")**: ILMC was "in the business of preparing and submitting petitions on behalf of client companies to the United States government for temporary workers under the H-2B Visa program and the H-2A agricultural Visa program." (Indictment, Count 1, ¶ 1). According to the government, Eury has held a "primary ownership interest" in ILMC, and he was the President of ILMC until April of 2008. (Count 1, ¶ 3). The government also alleges that Eury "exercised control over the management and finances of ILMC." (Count 1, ¶ 4). After Eury resigned as President in April, 2008, S.E.F. served as ILMC's President, became responsible for the daily operations of ILMC, and had oversight responsibility for the preparation of H-2A and H-2B Visa petitions. (Count 1, ¶ 7).

**North Carolina Growers Association ("NCGA"):** NCGA was "in the business of obtaining H-2A agricultural workers for its member farmers." (Count 1, ¶ 8). The government alleges that White and Wicker were "Deputy Directors" of NCGA, that Eury

---

[2] Any fact in this Motion is a description, by counsel, of the allegations in the Indictment, and should not be construed as an admission by any defendant.

was its Executive Director, and that, as a result of their roles as directors and officers, White, Wicker, and Eury owed fiduciary duties to NCGA. (Count 1, ¶¶ 10, 11, 12).

**Consular Solutions, Inc. ("CSI"):** CSI was a Mexican corporation "in the business of recruiting Mexican workers to work in the United States." (Count 1, ¶ 13). According to the government, Eury, White, and Wicker "exercised control over the finances and operations of CSI." (Count 1, ¶ 14). Although not explicitly alleged in the Indictment, the government implies that NCGA and CSI entered into a business arrangement of some sort, at some undisclosed point in time, and that Eury, White, and Wicker "concealed their control of CSI from NCGA and its members in violation of their duty of good faith to NCGA and its members." (Count 1, ¶ 15).

**Application Services and Administrative Program, LLC ("ASAP"):** ASAP was a Delaware company whose purpose and regular business the government does not explicitly allege. (Count 1, ¶ 16). However, the government contends that ASAP was a tool used by Eury, Wicker, and White to fraudulently extract recruitment fees that were prohibited to be charged to temporary workers after January of 2009. (Counts 1, 11-87) The government alleges that, from January 2009 to the present, Eury, White, and Wicker have held membership interests in ASAP and have exercised control over ASAP's finances and operations. (Count 1, ¶ 17).

**The Labor Company ("TLC"):** TLC was "in the business of preparing and submitting petitions on behalf of client companies to the United States government for temporary alien workers under the H-2B Visa program and the H-2A agricultural

3

program." (Count 1, ¶ 18). The government charges that Eury, White, and Wicker controlled TLC's finances and operations. (Count 1, ¶ 19).

Count One of the Indictment purports to charge a single conspiracy among Eury, Wicker, White, and others to commit several distinct federal offenses, in violation of *both* 18 U.S.C. § 371 and 8 U.S.C. § 1324(a)(1)(A)(v)(I).[3] According to the Indictment, this overarching, multi-object conspiracy existed from December 2006 until April 1, 2009. (Count 1, ¶ 39). Stripped to its essence, the Indictment alleges that the conspiracy charged in Count One consisted of, at the least, two distinct schemes.

**The Recruiting Fee Scheme:** The Recruiting Fee Scheme (corresponding to Counts Eleven through Eighty-Seven of the Indictment) is one of the two distinct schemes alleged in Count One. According to the government: "Prior to January 2009, recruiters and agents were [allowed to charge a fee to] foreign workers seeking H-2A or H-2B employment . . . as a condition of an offer of H-2A and H-2B employment in the United States." (Count 1, ¶ 35). Under the law at that time, recruiting agents, including CSI, required "foreign workers to pay a fee as a condition of their offer of H-2A and H-2B employment." (*Id.*). From 2006 to 2009, NCGA paid CSI a recruiting fee of approximately $80.00 per worker. (Count 1, ¶ 37).

---

[3] Counts Two through Ten of the Indictment allege nine distinct instances of Eury's alleged money laundering, based on allegations that Eury engaged in transactions with the proceeds derived from ILMC's participation in a vast immigration fraud scheme. Counts Eleven through Seventeen allege that Eury, White, and Wicker committed wire fraud on various occasions, in violation of 18 U.S.C. § 1341, based on their alleged scheme to defraud the clients of ILMC and TLC, as well as NCGA, out of unnecessary and inflated recruiting fees. Counts Seventeen through Eighty-Seven allege that Eury, White, and Wicker illegally laundered the proceeds of the wire fraud alleged elsewhere in the Indictment, in violation of 18 U.S.C. § 1957.

4

In January of 2009, the government alleges, the Department of Homeland Security promulgated regulations "which prohibited a facilitator, recruiter, or similar employment service from charging a fee from workers as a condition of the offer of obtaining H-2B or H-2A employment." (Count 1, ¶ 38). In response, Eury, Wicker, and White allegedly devised the Recruiting Fee Scheme as a means to continue receiving the recruiting fees that CSI had charged to employees before 2009. Allegedly, Eury, Wicker, and White formed ASAP in January of 2009 as part of this scheme. (Count 1, ¶ 17). The government further alleges that Eury, Wicker, and White then directed ILMC and TLC's clients (employers seeking H-2A or H-2B workers) to pay a $99.00 fee to ASAP, "under the false pretense that ASAP was collecting a $99.00 per-worker fee charged by CSI in Mexico, when in fact the $99.00 fee supposedly charged by ASAP included approximately fifty percent mark up to allow [Defendants] to recoup fees previously charged to workers as a condition of H-2A and H-2B employment." (Count 1, ¶ 65). Eury, White, and Wicker allegedly "concealed their interest in and control of TLC, ASAP and CSI from clients by instructing S.E.F., ILMC, and TLC to represent that each was a separate and autonomous, third-party entity," when they were not. (Count 1, ¶ 68).

In a similar vein, as part of the Recruiting Fee Scheme, the government alleges that Eury, Wicker and White "directed that NCGA pay ASAP an $80.00 per worker fee purportedly charged by CSI, despite the fact that NCGA was not in violation of the new regulations and was already making payments directly to CSI." (Count 1, ¶ 69). Eury, White, and Wicker allegedly "concealed from NCGA and its members that they [the

5

Defendants] would use ASAP to convert approximately fifty percent of fees paid to ASAP by NCGA to their own benefit in violation of their duty of good faith to NCGA and its members." (Count 1, ¶ 69). As a result of this scheme, the government alleges, Eury, Wicker and White obtained through ASAP roughly one million dollars each from NCGA and the clients of ILMC and TLC, under the purportedly false pretense that ASAP was collecting a processing fee on behalf of CSI. (Count 11, ¶¶ 27-29).

**The Immigration Fraud Scheme:** The second distinct scheme alleged in Count One is the Immigration Fraud Scheme (corresponding to Counts Two through Ten). This scheme centered on ILMC, S.E.F., and Eury's allegedly false statements to federal agencies in connection with the H-2B Visa application process. According to the Indictment, Eury and S.E.F. "falsely petitioned for and obtained extra H-2B Visas above and beyond the actual needs of their client employers for the purposes of creating pools of extra Visas." (Count 1, ¶ 42). Eury and S.E.F. allegedly "falsely and fraudulently represented to the Department of Labor and USCIS that their client employers had jobs for H-2B workers in greater numbers than actually needed by the client employers." (Count 1, ¶ 43). Eury and S.E.F. allegedly "falsely and fraudulently instructed clients that they needed to petition for H-2B Visas above and beyond their actual needs to ensure that they would be approved for the excess H-2B Visas, which [Eury] and S.E.F., through ILMC, would then fraudulently use to enter alien workers into the United States for other client employers or otherwise use to benefit themselves."

The overt acts corresponding to this scheme generally involve Eury or S.E.F.'s submission of allegedly false petitions on behalf of ILMC clients between June 28, 2006, and February 2013. (Count 1, ¶¶ 71, 107). According to the Indictment, ILMC disbursed approximately 1.12 million dollars to Eury in furtherance of the Immigration Fraud Scheme (Count 1, ¶ 41). This is the same amount that ILMC allegedly disbursed to Eury in connection with the money laundering charges alleged in Counts Two through Ten.

## ARGUMENT

Count One is duplicitous—that is, it alleges more than one criminal offense—because it fails to allege that the Recruiting Fee Scheme and the Immigration Fraud Scheme were part of a single conspiracy, joined by one common agreement to violate the law. To the contrary, the Indictment depicts each scheme as a separate conspiracy in its own right. Each alleged scheme, therefore, should be charged in a separate count if it is charged at all. In addition, because Count One involves both multiple alleged crimes *and* multiple defendants, it violates the rules governing joinder, and will inevitably result in unfair prejudice to Defendants. As a result, Count One should be dismissed.

## I. Count One is duplicitous and must be dismissed.

### A. Legal Standards

"[D]uplicity is the joining in a single count of two or more distinct and separate offenses." *United States v. Burns*, 990 F.2d 1426, 1438 (4th Cir. 1993) (internal quotation marks omitted). Potential adverse effects on a defendant of a duplicitous count implicate Fifth and Sixth Amendment rights, and include "improper notice of the charges . . .,

prejudice in the shaping of evidentiary rulings, in sentencing, in limiting review on appeal, in exposure to double jeopardy, and of course the danger that a conviction will result from a less than unanimous verdict as to each separate offense." *United States v. Kamalu*, No. 06-4956, 298 Fed. App'x 251, 254 (4th Cir. 2008) (unpublished) (quoting *United States v. Duncan*, 850 F.2d 1104, 1108 n.4 (6th Cir. 1988)).

Courts within the Fourth Circuit have recognized that charging multiple conspiracies in a single count is impermissibly duplicitous. *See, e.g., United States v. Urbanik*, 801 F.2d 692, 695 (4th Cir. 1986) ("It is improper to charge a single conspiracy when multiple conspiracies exist. . .").[4] Although a single conspiracy potentially may consist of an agreement to commit multiple offenses, a conspiracy count is impermissibly duplicitous when, rather than alleging multiple objects, it alleges multiple conspiracies. Thus, it is true that "'[t]he allegation in a single count of conspiracy to commit several crimes is not duplicitous, for the conspiracy is the crime, and that is one, however diverse its objects.'" *United States v. Marshall*, 332 F.3d 254, 262 (4th Cir. 2003) (quoting *Braverman v. United States*, 317 U.S. 49, 54 (1942)). However, the rule in *Braverman*

---

[4] *Accord, e.g., United States v. Allmendinger*, 2011 U.S. Dist. LEXIS 23142, at *3 (E.D. Va. Mar. 7, 2011) ("It is unquestioned that an Indictment cannot charge two conspiracies in a single count."); *United States v. Berlin*, 707 F. Supp. 832, 836 (E.D. Va. 1989) ("There is no doubt that an Indictment cannot charge two conspiracies in a single count."); *accord United States v. Trainor*, 477 F.3d 24, 31 (1st Cir. 2007) ("A claim that the government improperly has characterized a series of allegedly unlawful transactions as a single enterprise can implicate . . . the doctrine of 'duplicity'—the joining of two or more distinct offenses in a single count of an Indictment."); *United States v. Miller*, 26 F. Supp. 2d 415, 423 (N.D.N.Y. 1998) (explaining the doctrine of duplicity and concluding that "[a]n Indictment, therefore, may not charge multiple conspiracies in a single count."); *United States v. Alexander*, 736 F. Supp. 968, 994-95 (D. Minn. 1990) ("Defendants argue that Count I fails to charge a single conspiracy and that, on its face, it demonstrates the charging of at least two, and as many as eight, separate conspiracies. If that is indeed the case, the Indictment is duplicitous on its face.").

presupposed a "verdict . . . supported by evidence of but a single conspiracy," *Braverman*, 317 U.S. at 50, and thus stands only for the uncontroversial proposition that "an Indictment is not duplicitous merely because it alleges a conspiracy to commit multiple crimes." *United States v. Berger*, 22 F. Supp. 2d 145, 150 (S.D.N.Y. 1998).

As established by the many cases that have condemned the charging of multiple conspiracies within a single count, *Braverman* does ***not*** permit the government to circumvent the doctrine of duplicity by cobbling together distinct schemes into one count and labeling the charge as a single conspiracy. A duplicity claim thus raises the issue of whether a single conspiracy is properly alleged in the first place—an issue that is distinct from (and analytically prior to) the one presented in *Braverman*.

### B.    Analysis

The factual allegations underlying Count One show that it charges at least two distinct schemes to violate different criminal laws that, even if true, were never part of the same conspiracy. Critically missing from the Indictment are allegations that the various schemes shared a common purpose, depended on each other for their own success, were of a like or even similar nature, or had a substantial overlap in membership. Instead, the Government has alleged freestanding schemes that existed independently of one another. It follows that they constituted separate conspiracies.

**No Common Purpose.** There is no common objective that unites the Recruiting Fee Scheme and the Immigration Fraud Scheme. *See Alexander*, 736 F. Supp. at 995 (explaining that when complex, multiple-object conspiracies are alleged in a single

9

count, "[t]he linchpin for such a charge to be properly pleaded is the existence of a single common objective."). Instead, as set forth explicitly in the Indictment, the alleged schemes involved their own discrete objectives. The alleged objective of the Recruiting Fee Scheme was to defraud private parties—NCGA and clients of ILMC and TLC—in connection with payment of unnecessary and inflated recruiting fees to ASAP (and ultimately to Eury, Wicker, and White). The alleged objective of the Immigration Fraud Scheme, on the other hand, was for Eury, S.E.F., and others–but not Wicker and White–to defraud federal authorities of their responsibility to enforce immigration rules. The alleged purposes of these schemes were not "common."

**Absence of Interdependence**. Even assuming, *arguendo*, that Count One alleges a common purpose–and it does not–it is duplicitous because the Indictment fails to allege sufficient interdependence among the alleged co-conspirators. *See United States v. Harrison*, 942 F.2d 751, 756 (10th Cir. 1991) (explaining that interdependence is the "principal concern" in distinguishing between single and multiple conspiracies) (internal quotation marks omitted); *United States v. Smith*, 86 F.3d 1154 (4th Cir. June 4, 1996) (unpublished) (same); *United States v. Hadeed*, 2009 U.S. Dist. LEXIS 49417 *32 (E.D. Va. June 12, 2009) ("One conspiracy requires 'interdependence among the alleged co-conspirators.'") (quoting *United States v. Chandler*, 388 F.3d 796, 811 (11th Cir. 2004)). That is, even if Eury, White, and Wicker shared a common goal, interdependence is still a necessary component of tying the schemes together. *United States v. Carnagie*, 533 F.3d 1231, 1239 (10th Cir. 2008)

("This common goal, however, is not by itself enough to establish interdependence: 'What is required is a shared, single criminal objective, not just similar or parallel objectives between similarly situated people.'") (quoting *United States v. Evans*, 970 F.2d 663, 671 (10th Cir. 1992)). "Interdependence is established when the activities of the alleged co-conspirators in one aspect of the charged scheme are necessary or advantageous to the success of the activities of co-conspirators in another aspect of the charged scheme, or the success of the venture as a whole." *United States v. Stewart*, 256 F.3d 231, 250 (4th Cir. 2001).

As alleged in the Indictment, the two schemes operated independently, and the success of one scheme did not affect the other or even increase the probability that the other would succeed. If anything, the Recruiting Fee Scheme, as alleged, was practically and economically antagonistic to the Immigration Fraud Scheme. That is because one could logically expect the recruiting fees that Eury, White, and Wicker allegedly exacted through the Recruiting Fee Scheme would impede or at least diminish the marginal number of employers who would otherwise attempt to obtain H-2A or H-2B employees through the Immigration Fraud Scheme. Stated differently, under the government's theory, the most pragmatic and efficient way for S.E.F. and Eury to have ensured the success of the Immigration Fraud Scheme would have been to eliminate the Recruiting Fee Scheme entirely, because the latter scheme allegedly introduced unnecessary costs and externalities for ILMC and TLC's clients—the parties who were seeking temporary labor through the Recruiting Fraud Scheme.

**Distinct Nature, Time Period, and Membership.** The alleged Recruiting Fee Scheme is uniquely distinct in nature, time period, and membership. While the Indictment alleges that overt acts in furtherance of the Immigration Fraud Scheme began in 2006 and continued to the present, the overt acts in furtherance of the Recruiting Fee Scheme did not allegedly occur until early 2009, when the federal government passed new regulations governing recruitment fees in the H-2A and H-2B programs. Moreover, the Recruiting Fee Scheme allegedly involved Eury, Wicker, and White, and S.E.F. is barely mentioned at all in connection with that scheme. Likewise, the Indictment contains absolutely no allegation that Wicker or White participated in *or were even aware of* alleged efforts of S.E.F. and Eury to pad the number of visas ILMC requested for its clients and NCGA, as alleged in the Immigration Fraud Scheme.

In sum, Count One alleges multiple conspiracies because, according to the Indictment itself, the two alleged schemes operated in complete isolation, with no common purpose and without any interdependence between or among them. To argue otherwise, the Government may rely on oft-used generalizations, such as, "a shifting membership in the conspiracy does not preclude a finding of a single conspiracy," *United States v. Bollin*, 264 F.3d 391, 406 (4th Cir. 2001), and, "it is not necessary to proof of a conspiracy that it have a discrete, identifiable organizational structure[.]" *United States v. Banks*, 10 F.3d 1044, 1054 (4th Cir. 1993). In this case, though, those statements are beside the point. The infirmity of the charged conspiracy is not that its membership changed over time or lacked any particular structure. The conspiracy charge fails because

12

it alleges various schemes that—even with some overlap in membership—operated as isolated units not subject to a single agreement, the success or failure of which was unaffected by the others' existence. *See United States v. Velasquez*, 772 F.2d 1348, 1353 (7th Cir. 1985) ("But the mere fact that two conspiracies have overlapping memberships will not authorize a single Indictment if the conspiracies cannot be tied together into one conspiracy, one common plan or scheme.").

The Government also may argue that the Motion to Dismiss should be denied because Count One contains a boilerplate, conclusory allegation that Defendants "did knowingly combine, conspire, confederate and agree to commit offenses against the United States," followed by a recitation of four disparate offenses Defendants allegedly conspired to commit. That argument is wrong for two reasons.

First, the alleged overt acts and other factual allegations that support a conspiracy count must be considered in assessing a claim of duplicity. For example, in *United States v. Bowline*, the Tenth Circuit held that a single conspiracy count was facially duplicitous even though it alleged that the defendants "combined, conspired, confederated and agreed to manufacture, possess with intent to distribute, and distribute a . . . controlled substance," refusing to artificially view such an allegation in isolation. 593 F.2d 944, 946 (10th Cir. 1979). Similarly, in *United States v. Marlinga*, No. 04-CR-80372, 2005 U.S. Dist. LEXIS 3156 at *12 (E.D. Mich. Feb. 28, 2005), the court rejected the government's reliance on the conclusory allegation of a single conspiracy: "Contrary to the Government's position, this Indictment does, indeed, allege two distinct conspiracies in

Count One, though only one is pled." *Id.* The court held that the conspiracy count was duplicitous because the Indictment alleged "[t]wo different means and methods," and "a single venture agreed upon by [the defendants] with a common goal, [was] decidedly missing and not articulated in Count One." *Id.*

Second, if the government's conclusory conspiracy allegation were permitted to control, then absurd results would follow. A boilerplate allegation would insulate every Indictment from challenge regardless of the actual facts alleged. In such circumstances, Defendants could virtually never challenge the face of a conspiracy count as duplicitous on the ground that it alleged multiple conspiracies, even though the doctrine of duplicity specifically requires an analysis of an Indictment's facial validity.[5]

What is more, charging multiple conspiracies against multiple defendants may result in misjoinder and raise legitimate claims that charges against different defendants must be severed and tried separately. *See* Fed. R. Crim. P. 8. Because severance claims are ideally resolved before trial, "[o]ne exception for going behind the allegations on the face of the indictment in deciding whether joinder is proper is if the Indictment alleges a single conspiracy, but the facts alleged in the Indictment show multiple conspiracies." *United States v. Massa*, 740 F.2d 629, 644 (8th Cir. 1984), *overruled on other grounds, United States v. Inadi*, 475 U.S. 387, 391 (1986), (citing *United States v. Levine*, 546 F.2d 658, 663 (5th Cir. 1977) (finding misjoinder as a matter of law because the government rested its conspiracy count on the "false legal premise that proof of proximate or

---

[5] Indeed, duplicity arguments may be waived if not made before trial. *See United States v. King*, 628 F.3d 693, 699 (4th Cir. 2011).

Case 1:14-cr-00039-WO   Document 63   Filed 01/19/15   Page 14 of 22

simultaneous conspiracies with one common conspirator was sufficient to establish the existence of a single conspiracy.")).

## II.    Dismissal of Count One is the proper remedy.

Because Count One alleges multiple conspiracies and is thus duplicitous, it should be dismissed. "Where an Indictment or information contains a duplicitous count, the proper remedy is to dismiss the count or to require the United States to elect which offense it desires to pursue." *United States v. Pleasant*, 125 F. Supp. 2d 173, 176 (E.D. Va. 2000).[6] Under certain circumstances, courts have also remedied duplicity by ordering the government to seek from the grand jury a reformulated Indictment that is not duplicitous. *See Marlinga*, 2005 U.S. Dist. LEXIS 3156, at *16-17. In general, the Court has discretion to fashion relief "according to the particular harm or harms to be avoided" in a particular case. *United States v. Sturdivant*, 244 F.3d 71, 79 (2d Cir. 2001).

As explained below, duplicity cannot be discounted as a harmless pleading defect, or remedied by a jury instruction. Indeed, to leave the multiple conspiracies in the same Indictment, even as separate counts, would constitute misjoinder under Fed. R. Crim. P. 8. Consequently, dismissal is the only remedy that will ensure compliance with Rule 8's pleading requirements. Moreover, even if misjoinder were not an insurmountable problem, Count One should be dismissed because the risk of trial prejudice is too severe.

---

[6] *See also United States v. Aguilar*, 756 F.2d 1418, 1423 (9th Cir. 1985); *United States v. Roy*, 2012 U.S. Dist. LEXIS 2522, at *16-17 (D. Vt. Jan. 9, 2012); *United States v. Bachman*, 164 F. Supp. 898, 900 (D.D.C. 1958) ("[I]f there are two or more separate and distinct offenses charged in one count, the Indictment becomes subject to a motion to dismiss.").

**A.** **Dismissal is warranted because of misjoinder under Fed. R. Crim. P. 8.**

Dismissal of Count One is warranted because it constitutes misjoinder under Rule 8(b). Rule 8 governs the joinder of offenses (under subsection (a)) and defendants (under subsection (b)). Rule 8(a) permits joinder of multiple offenses against a defendant if they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Rule 8(b) permits the joinder of defendants only if "they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses," thus excluding the possibility of joining defendants alleged to have committed offenses that "are of the same or similar character," but are otherwise unrelated. Fed. R. Crim. P. 8(b). When the "joinder involves both multiple offenses and multiple defendants, Rule 8(b) must be applied." *United States v. Attanasio*, 870 F.2d 809, 814 (2d Cir. 1989). When joinder is improper under Rule 8(b), *the charges must be severed*, and no showing of prejudice is required. *See United States v. Lane*, 474 U.S. 438, 449 n.12 (1986) (stating that Rule 8 "requires the granting of a motion for severance unless its standards are met, even in the absence of prejudice").

Because Count One alleges multiple conspiracies, "the general rule"–that "defendants charged in the same criminal conspiracy should be tried together," *United States v. Reavis*, 48 F.3d 763, 767 (4th Cir. 1995)–does not apply. Instead, under Rule 8(b), the alleged offenses must be "unified by some substantial identity of facts or participants" or "arise out of a common plan or scheme." *United States v. Porter*, 821

F.2d 968, 972 (4th Cir. 1987). Thus, while multiple conspiracies may be alleged against multiple defendants in the same Indictment, "the fact [that] two conspiracies 'are of a similar character or involve one or more common participants' is not enough. Even if there are some common participants, generally similar objectives, and common confidential informants, multiple conspiracies must have a common goal or purpose to be joined under Rule 8(b)." *United States v. Greenfield*, 2001 U.S. Dist. LEXIS 16628, at *11 (S.D.N.Y. Oct. 16, 2001) (quoting *United States v. Lech*, 161 F.R.D. 255, 256 (S.D.N.Y. 1995) (Sotomayor, J.)) (other internal citations omitted).

In light of these principles, the multiple conspiracies alleged in Count One, even if they are properly pleaded, cannot be joined under Rule 8(b) for the same reasons that they cannot be charged in the same count as a single conspiracy: As alleged, they constitute distinct, isolated operations that were not part of the same "common plan or scheme." The Indictment does not allege any "substantial identity of facts or participants between the offenses" or suggest that "proof of such facts is necessary to establish each offense[.]" *United States v. Coppola*, 788 F.2d 303, 306 (5th Cir. 1986). And, even if the Indictment could be said to make substantial factual allegations that the alleged schemes involved an overlap in membership (and the only allegation in that regard is that Eury participated in both the Recruiting Fee and Immigration Fraud conspiracies), "charges linked merely by common conspiracy members may not be joined." *United States v. Liveoak*, 377 F.3d 859, 865 (8th Cir. 2004); *see also United States v. Mackins*, 315 F.3d 399, 412-13 (4th Cir. 2003) (finding misjoinder under the broader Rule 8(a) because "the

only connection" between a "counterfeit check conspiracy" and "drug and money laundering conspiracies" was the defendant's alleged participation in each).

If the Court remedies the duplicity problem in Count One, Defendants submit that severance will be appropriate after they are faced with a non-duplicitous Indictment that charges only one crime in each count. At this point, Defendants do not believe that it is appropriate to ask the Court itself to reformulate Count One into multiple offenses, because such separate offenses have not been presented to or charged by a grand jury. However, defendants reserve their rights to seek such severance under Fed. R. Crim. P. 8 and 14. Any effort by the government to unilaterally rewrite Count One by dividing it into multiple conspiracy counts, or by electing one conspiracy and striking the others, would unconstitutionally invade the province of the grand jury. *See Stirone v. United States*, 361 U.S. 212, 218-19 (1960) ("The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment."); *accord United States v. Lentz*, 524 F.3d 501, 511 (4th Cir. 2008) ("[T]he 'court cannot permit a defendant to be tried on charges that are not made in the Indictment against him.'") (quoting *Stirone*, 361 U.S. at 217); *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999) ("[O]nly the grand jury may broaden or alter the charges in the Indictment.").

The impropriety of joinder under Rule 8 is an additional reason to dismiss Count One rather than to order an alternative form of relief. *See, e.g., Marlinga*, 2005 U.S. Dist. LEXIS 3156, at *20-21 (finding a single count charging multiple conspiracies to be

"duplicitous," and concluding that "[b]ecause of the Court's finding that misjoinder has occurred [under Rule 8] . . . a single superceding Indictment charging two conspiracies is not appropriate. Separate Indictments is the only solution.").

### B.    Dismissal is also warranted because of prejudice.

Even if dismissal were not otherwise required, it is the only remedy that will protect Defendants from substantial trial prejudice, including the potential violation of their constitutional rights. In this case, trial prejudice inevitably will result if the jury is asked to consider Count One as charged. First, there is a substantial risk of "prejudicial spillover" of evidence from one conspiracy into another. *See Bollin*, 264 F.3d at 406. For example, if Count One is tried as a single conspiracy against all Defendants, then evidence of the Immigration Fraud Scheme will be admitted against White and Wicker, even though the Indictment contains no allegations that either was involved in that ostensible conspiracy.

Second, without any assurance of a unanimous verdict in the event of conviction, Defendants' Sixth Amendment right to jury unanimity will be compromised. *See United States v. Sarihifard*, 155 F.3d 301, 309-10 (4th Cir. 1998) ("In cases where a defendant is tried before a jury, the Sixth Amendment guarantees that the jury's findings of guilt be unanimous."); *Kamalu*, 298 Fed. App'x at 254 ("The overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or on [multiple]," or if a "conviction . . . result[ed] from a less than unanimous verdict as to each separate

19

offense.") (internal quotation marks omitted). If Count One is submitted to a jury as pleaded, it could potentially convict Defendants on any of the alleged conspiracies in Count One—even those in which they individually played no part—or any combination thereof. Jurors also potentially could convict without unanimity, by spreading their votes among the multiple conspiracies.

Third, given the uncertainty that invariably shrouds a conviction on a duplicitous count, Defendants' Fifth Amendment rights would be threatened because "confusion as to the basis of the verdict may subject defendant[s] to double jeopardy in the event of a subsequent prosecution." *United States v. Drury*, 687 F.2d 63, 66 (5th Cir. 1982) (internal quotation marks omitted); *see also United States v. Ayala*, 601 F.3d 256, 264 (4th Cir. 2010) ("The Double Jeopardy Clause [of the Fifth Amendment] states that no person shall be subject for the same offence to be twice put in jeopardy of life or limb.") (internal quotation marks omitted).

## CONCLUSION

For the reasons stated above, Count One should be dismissed as duplicitous. Otherwise, alleged offenses and Defendants will be misjoined, and Defendants will be subject to unfair prejudice and the potential violation of their constitutional rights. In the alternative, Defendants request that the Court order the Government to seek a reformulated Indictment from the grand jury that does not contain duplicitous counts.

Respectfully submitted, this the 19th day of January, 2015.


/s/ Kearns Davis          /s/ Wade Smith              /s/ Lisa S. Costner
Kearns Davis              Wade M. Smith               Lisa S. Costner
N.C. State Bar No. 22014  N.C. State Bar No. 4075     N.C. State Bar No.14308
kdavis@brookspierce.com   wsmith@tharringtonsmith.com costner1@triad.rr.com


/s/ Wes J. Camden         Melissa Hill                Lisa S. Costner, PA
Wes J. Camden             N. C. State Bar No. 14130   407 Summit St.
N. C. State Bar No. 33190 mhill@ tharringtonsmith.com Winston-Salem, NC
wcamden@brookspierce.com                              27101
                          Tharrington  Smith, LLP     (336) 748-1885
Brooks, Pierce, McLendon, 150 Fayetteville Street     Fax: 336-722-9981
Humphrey, & Leonard,      Suite 1800
L.L.P.                    Raleigh, North  Carolina
P. O. Box 26000           27602
Greensboro, NC 27420-6000 (919) 821-4711
(336) 373-8850            Fax: (919) 829-1583
Fax:  (336) 378-1001


*Counsel for Defendant Craig*   *Counsel for Defendant Harry*   *Counsel for Defendant*
*Stanford Eury, Jr.*            *Lee Wicker, Jr.*               *Kenneth W. White*

## CERTIFICATE OF SERVICE

I hereby certify that, on the date below, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Frank Chut, Esq.

This the 19th day of January, 2015.

/s/ Wes J. Camden