IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CRAIG STANFORD EURY, JR., and | ) | 1:14CR39-1 |
| KENNETH W. WHITE. | ) | 1:14CR39-5 |
| | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

BEATY, District Judge.

This matter is before the Court on a Motion to Dismiss Count One of the Second Superseding Indictment [Doc. #63] pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure jointly filed by Defendants[1] Craig Stanford Eury, Jr., and Kenneth W. White (hereinafter "Defendants"), a Motion to Compel Production of the Transcript of the Grand Jury Charging Statement [Doc. #65] jointly filed by Defendants, a Motion to Suppress [Doc. #66] jointly filed by Defendants, a Motion to Strike Surplusage from the Second Superseding Indictment [Doc. #64] filed by Defendant Eury, a Motion to Strike Surplusage from the Second Superseding Indictment [Doc. #67] filed by Defendant White, a Joint Motion for Discovery

---

[1] Harry Lee Wicker also joined in the jointly filed Motions referenced herein. On April 14, 2015, however, prior to the hearing concerning these Motions, Wicker entered a plea of guilty to Section IV of Object 1 of Count One of the Second Superseding Indictment. As a result of his guilty plea, Wicker waived all nonjurisdictional defects in the Indictment. <u>United States v. Robinson</u>, 82 Fed. App'x 322, 323 (4th Cir. 2003); see also <u>United States v. Moussaoui</u>, 591 F.3d 263, 280 (4th Cir. 2010) (finding that a defendant waived all nonjurisdictional errors after entering a guilty plea, except for those affecting the adequacy of his plea). Accordingly, none of the findings below, including those concerning the dismissal of Count One are applicable to Wicker, as he waived his right to assert such nonjurisdictional defenses, including duplicity, by entering his guilty plea.

[Doc. #17] filed be Defendant Eury, and a Joint Motion for Discovery [Doc. #45] joint filed by Defendants.

Defendants are named in an 87 count Indictment, which includes Count One charging Defendants with conspiracy, or aiding and abetting the same, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) and 18 U.S.C. §§ 371 & 2. The Court held a hearing on the above-mentioned Motions on April 16, 2015. During the hearing Defendants indicated that they did not need to address the Joint Motions for Discovery. As to the Motions to Strike Surplusage and Motion to Suppress, the Court made findings as to these during the hearing, which the Court will elaborate on below. At the conclusion of the hearing, the Court informed the parties that an Order would be forthcoming concerning its decision as to Defendants' Motion to Dismiss and Motion to Compel. For the reasons discussed herein, the Court will grant Defendants' Motion to Dismiss, and as a result, will deny Defendants' Motion to Compel as moot. All other Motions are denied as moot, as explained below.

I. BACKGROUND

The Second Superseding Indictment (hereinafter "Indictment") was filed against Defendants on September 30, 2014. In Count One of this Indictment, Defendants were charged with a multi-object conspiracy to defraud the United States by obstruction of the immigration laws of the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) and 18 U.S.C. §§ 371 and 2. Counts Two through Ten charge Defendant Eury with engaging in monetary transactions with the criminally derived proceeds of visa fraud and inducing aliens to enter and reside in the United States in violation of 18 U.S.C. § 1957. Counts Eleven through Sixteen

charge Defendants with a mail fraud scheme and artifice to defraud the clients of International Labor Management Corporation ("ILMC"), The Labor Company ("TLC"), and North Carolina Growers Association ("NCGA") of money and property in violation of 18 U.S.C. § 1341. Counts Seventeen through Eighty-Seven charge Defendants with conducting financial transactions with the criminally derived proceeds of the mail fraud scheme and artifice to defraud in violation of 18 U.S.C. § 1957. The Motions at issue for this Opinion and Order all relate to Count One of the Indictment, the conspiracy count, which will be discussed in greater detail below.

The overall Indictment concerns violations relating to the H-2A and H-2B visa process. The H-2A and H-2B worker programs allow employers to obtain alien workers for specific temporary agricultural jobs and non-agricultural jobs respectively. Both of the programs have a specific application process, requiring that employers complete certain forms and submit such forms to the United States Citizenship and Immigration Services (USCIS). The H-2B worker program caps the number of visas at 66,000 per fiscal year, but the H-2A program does not have such cap. Prior to January 2009, recruiters and agents were not prohibited from charging a fee to foreign workers seeking visas under these programs as a condition of an offer of H-2A and H-2B employment. In January 2009, however, the United States Department of Homeland Security set forth regulations that prohibited charging such fees as a condition of the offer of employment.

Various companies are alleged to play different roles in the Indictment. Initially, the

3

company that was part of the original Indictment[2] in this matter, ILMC, is a corporation founded by Defendant Eury, that was in the business of preparing and submitting petitions on behalf of client companies to the USCIS for both visa programs. Up until April 2008, Defendant Eury was the President of ILMC, and at all times relevant to the Indictment he exercised control over the management and finances of ILMC. After April 2008, the now unindicted co-conspirator, S.E.F., took on the role as President of ILMC. Harry Wicker, who was also charged in the Indictment, but later pled guilty to a portion of Count One, is also alleged to have served as a consultant for ILMC, but it is not clear during what time frame this occurred or what exactly his role was with ILMC. Another company involved in this Indictment, is TLC, which was also in the business of submitting petitions on behalf of client companies to USCIS for temporary alien workers under the visa programs. The Indictment alleges that Defendants exercised control over the finances and operations of TLC at all times relevant to the Indictment. Similar to ILMC and TLC, NCGA, was also in the business of obtaining visas. NCGA, however, was only in the business of obtaining agricultural worker visas under the H-2A program. Wicker and Defendant White were Deputy Directors of NCGA during all times relevant to the indictment, and Defendant Eury served as NCGA's Executive Director.

Another company relevant to the Indictment was Consular Solutions, Inc. ("CSI"). CSI was a Mexican corporation and was in the business of recruiting Mexican workers to work in

---

[2]Since the time of the first Indictment, which was filed on January 31, 2014, indicting Defendant Eury, S.E.F., and ILMC, two superseding Indictments, including the Indictment at issue, have been filed in this matter.

the United States. It is alleged that Defendants exercised control of the finances and operations of CSI at all times relevant to the Indictment. Additionally, Application Services and Administrative Program, LLC ("ASAP") is another company involved in the Indictment. It is alleged Defendants directed the incorporation of ASAP, served as or are serving as members of ASAP, and exercised control over the finances and operations of ASAP.

As stated above, Count One charges Defendants with a multi-object conspiracy. Defendants are jointly named in Object One of Count One, but only Defendant Eury is named in Objects Two through Four. The Government asserts that despite this being a multi-object conspiracy, the overarching conspiracy in Count One is to obstruct and circumvent the immigration laws of the United States. In conspiring to obstruct and circumvent the immigration laws, it is alleged that Defendant Eury and S.E.F. took part in various acts through ILMC, which included: (1) falsely petitioning for and obtaining extra H-2B visas above and beyond the actual needs of their clients for the purpose of creating pools of extra visas that they would use for their financial benefit by allowing other employers who could not obtain such visas due to the cap to bring the workers into the United States under the pretense that they would be working for the employer for which the visas had originally been approved; (2) falsely representing to the Department of Labor and USCIS that their client employers had jobs for H-2B workers in greater numbers than actually needed; (3) falsely instructing clients that they needed to petition for H-2B visas above and beyond their needs so Defendant Eury and S.E.F. could use the excess pool for their benefit; (4) charging clients based on ranges of H-2B visas sought rather than the actual numbers to encourage clients to seek more visas than they needed;

5

and (5) directing ILMC employees to prepare false petitions for H-2A workers knowing that the need for the client was a ruse to obtain entry for alien workers in order to take H-2B employment positions. The Indictment contains numerous other instances related to Defendant Eury's and S.E.F.'s role in manipulating the visa application process by creating a pool of extra visas, which were then used for their financial benefit. All of the overt acts set forth in the Indictment relating to this manipulation by Defendant Eury and S.E.F. appear to have been accomplished between June 2006, through February 2013.

The Government additionally alleges that as part of the overarching conspiracy to obstruct and circumvent the immigration laws of the United States, Wicker and Defendants formed ASAP. The Government alleges that ASAP was formed to collect the per-worker fee from ILMC and TLC employer clients after January 2009, under the false pretense that ASAP was collecting a $99.00 per-worker fee charged by CSI in Mexico. This $99.00 fee, however, is actually alleged to have included a fifty percent (50%) mark-up so as to recoup the fees previously charged to workers, but now barred by the regulations promulgated by the United States Department of Homeland Security in January 2009. It is also alleged that Defendants directed ASAP to threaten ILMC and TLC clients with cancellation of workers if they did not pay such fees. Additionally, it is alleged that Defendants also directed NCGA to pay ASAP an $80.00 per-worker fee purportedly charged by CSI. In so doing, the Defendants concealed from NCGA and its members that they would use ASAP to convert approximately fifty percent (50%) of fees paid to ASAP by NCGA to their own benefit. It is alleged that Defendants concealed their interest in and control of TLC, ASAP, and CSI from clients by instructing S.E.F., ILMC,

and TLC to represent that they were separate and autonomous entities. The overt acts set forth in the Indictment relating to the illegal fees are alleged to have occurred between 2009 and 2013.

II. DISCUSSION

Collectively, Defendants have filed a total of seven Motions in this case, to which the Government has responded. In addition to the parties' briefing, the parties were provided the opportunity to address the Motions at the hearing held on April 16, 2014. The Motions will be discussed in turn below.

    A.    Motion to Dismiss Count One of the Superseding Indictment

In their Motion to Dismiss Count One of the Superseding Indictment, Defendants argue that Count One, which charges Defendants with a multi-object conspiracy, contains at least two distinct schemes. Defendants assert that one scheme is what they label as "the recruiting fee scheme." This scheme, Defendants state, involves all Defendants and comprises Defendants alleged scheme concerning the per-worker fees paid to ASAP after such fees were prohibited by the Department of Homeland Security's regulations established in January 2009. Defendants assert that the second scheme is what they label "the immigration fraud scheme" (hereinafter "visa manipulation scheme").[3] This scheme, the Defendants state, involves the overt acts involving only Defendant Eury, S.E.F., and ILMC submitting allegedly false petitions on behalf of ILMC clients between June 2006, and February 2013. Defendants argue that these schemes do not have a common purpose, they are not interdependent, and they are distinct in nature,

---

[3]Rather than referring to it as the "immigration fraud scheme," it appears to be better described and distinguished as the "visa manipulation scheme."

time period, and membership.

In response, the Government argues that Count One, on its face, alleges a single conspiracy against Defendants to defraud the United States by obstructing the lawful government functions of various federal agencies in administrating the immigration laws of the United States for the Defendants' own benefit and profit. In arguing that the above two schemes are interrelated and form the basis of a single conspiracy, the Government states that any fraud that increased the number of H-2B visas was advantageous and related to the recoupment of the now forbidden worker fees. Additionally, the Government argues that because the H-2B visa program carries a 66,000 cap, the fraudulent practice of creating a pool of visas with ILMC also furthered the goal of preventing ILMC competitors from legally obtaining the visas, which was advantageous to the success of the scheme to circumvent the now forbidden per-worker fee.

Defendants bring their Motion to Dismiss Count One of the Indictment pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure. Generally, "if an indictment sets forth the essential elements of the offense in sufficient detail so as fairly to inform the defendant of the nature of the charge, then it is immune from attack on a motion to dismiss." United States v. Brandon, 150 F. Supp. 2d 883, 884 (E.D. Va. 2001)(citing Hamling v. United States, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974)). Rule 12(b)(3), however, specifically authorizes a defendant to bring a motion alleging that a defect in the indictment exists based on duplicity or the joining of "two or more offenses in the same count[.]" Fed. R. Crim. P. 12(b)(3)(B)(i).

Duplicity is considered to be " 'the joining in a single count of two or more distinct and

separate offenses.'" United States v. Burns, 990 F.2d 1426, 1438 (4th Cir. 1993) (quoting 1 Charles A. Wright, Federal Practice and Procedure § 142, at 469 (2d ed. 1982)). Generally, "[i]t is well settled that it is permissible to charge a conspiracy to commit several crimes, all in one count of an indictment without it being duplicitous." United States v. Kernodle, 367 F. Supp. 844, 851 (M.D.N.C. 1973) (citing Braverman v. United States, 317 U.S. 49, 63 S. Ct. 99, 87 L. Ed. 23 (1942)) (other citations omitted). This is so, because "[a]n agreement to commit several crimes is but one offense even though one or more means are alleged to have been used to complete the conspiracy." Id. (citing United States v. Johnson, 337 F.2d 180, 185 (4th Cir. 1964)). However, "multiple agreements to commit separate crimes constitute multiple conspiracies." United States v. Broce, 488 U.S. 563, 571, 109 S. Ct. 102 L. Ed. 2d 927 (1989).

"Generally, whether the Government has proved a single or multiple conspiracies is a question of fact for the jury." United States v. Fautleroy, 800 F. Supp. 2d 676, 689 (D. Md. 2011) (citing United States v. Roberts, 262 F.3d 286, 294 (4th Cir. 2001). This generalization is only true, however, when the indictment as drawn "permit[s] the government to prove a set of facts that would support a finding of one conspiracy." United States v. Berlin, 707 F. Supp. 832, 837 (E.D. Va. 1989) (citing United States v. Urbanik, 801 F.2d 692, 695–96 (4th Cir. 1986). When the indictment on its face presents more than one conspiracy in a single count, such a count is improper, as it is considered duplicitous. United States v. Jackson, 926 F. Supp. 2d 691, 700-01 (E.D.N.C. 2013) (citations omitted).

The Court in Jackson provided the well compiled discussion of what constitutes a single or multiple conspiracy count pursuant to Fourth Circuit case law:

9

> "Whether there is a single conspiracy or multiple conspiracies depends upon the overlap of key actors, methods, and goals." United States v. Leavis, 853 F.2d 215, 218 (4th Cir. 1988). "A single conspiracy exists when the conspiracy had the same objective, it had the same goal, the same nature, the same geographic spread, the same results, and the same product." United States v. Jeffers, 570 F.3d 557, 567 (4th Cir. 2009). Other factors in distinguishing a single conspiracy from multiple conspiracies include existence of long-standing business relationships, and "interdependence" among components of a conspiracy. United States v. Stewart, 256 F.3d 231, 251 (4th Cir. 2001). A "pattern of mutual cooperation between participating individuals demonstrates the requisite level of interdependence to support a conspiracy." Stewart, 256 F.3d at 251 (4th Cir. 2001) (citing United States v. MacDougall, 790 F.2d 1135, 1146 (4th Cir. 1986)). "Interdependence is established when the activities of alleged co-conspirators in one aspect of the charged scheme are necessary or advantageous to the success of the activities of co-conspirators in another aspect of the charged scheme, or the success of the venture as a whole." Id.

926 F. Supp. 2d at 701.

After reviewing the parties arguments contained in their briefing of the Motion to Dismiss Count One in conjunction with the parties arguments at the hearing, the Court finds that Count One is duplicitous. While the Government attempts to combine two separate agreements into one overarching conspiracy to violate the immigration laws of the United States, such a combination results in a count that is duplicitous on its face. In making this determination, the Court first, finds the timing difference in initiating the separate schemes to be of great importance. The Indictment alleges that Defendant Eury, S.E.F. and ILMC started the visa manipulation scheme in 2006. In 2006, however, the fee that was allegedly collected by Wicker and Defendants was legal, insomuch as it did not violate any criminal statute or regulation. It was not until January 2009, that the fee charged in association with the application process became illegal pursuant to regulations promulgated by the United States Department of Homeland Security.

10

The Government attempts to connect the two schemes in time by stating that prior to 2009, Defendants were collecting the fee, and although such fees were not yet illegal, Defendants were violating their duty of good faith to NCGA and its members during that time. Specifically, the Government asserts that the Defendants' duty of good faith was violated to the extent that they benefitted from the collection of the fees before 2009. Even if Defendants' actions may be considered a violation of their duty of good faith, this would not have constituted a violation of the criminal laws of the United States. Thus, in relation to the fee scheme there can be no allegation that prior to 2009, Defendants were conspiring to defraud the United States in violation of 18 U.S.C. § 371. Accordingly, there is no allegation that the two schemes were connected for purposes of a conspiracy to defraud the United States during the years of 2006 through 2009.

Furthermore, in examining the key actors, methods, and goals of the two schemes, it is apparent that the schemes described herein constitute two separate conspiracies. The key actors in the visa manipulation scheme were Defendant Eury, S.E.F., and ILMC; whereas, the key actors in the recruitment fee scheme were Wicker and Defendants. Thus, the only overlapping defendant was Defendant Eury. Additionally, although ASAP played an integral role in the recruitment scheme, ASAP had no role in the separate visa manipulation scheme. In fact, ASAP was not even established in 2006 when the visa manipulation scheme started.

The methods used by the different actors in the two identified schemes are also different. The methods used to gain financial benefit involved in the visa manipulation scheme relate solely to the manipulation of the visa application process and the designation of workers for certain

11

employers. On the other hand, the methods of the recruitment fee scheme relate solely to manipulation of the employers to pay an illegal collection fee on behalf of their client. While this is associated with the application process generally, such an association is minimal, as it is not associated with the requisite paperwork, physical application, or misplacement and movement of the workers.

The most apparent difference as to the key actors, methods, and goals, however, is the difference between the goals of the two schemes. The visa manipulation scheme had the goal of creating a pool of visas that would be used for the financial benefit of S.E.F., Defendant Eury, and ILMC. The goal of the recruitment fee scheme, however, was to manipulate the employer clients of ILMC and TLC to pay a certain fee for the financial benefit of Wicker and Defendants. The two identified schemes, thus, had different goals that drew financial gain from two separate methods and involved different key actors. Accordingly, while the result of the two identified schemes was the obstruction and circumvention of immigration laws, such schemes, nonetheless, constitute two separate conspiracies resulting from two separate agreements.

As the law directs courts to look at the face of the Indictment in determining whether multiple conspiracies exist for purposes of a Motion to Dismiss, the Court finds that it is also beneficial to point out obvious flaws in the construction of Count One and why based on such construction, it is even clearer that Count One constitutes two separate conspiracies. Count One of the Indictment has four separate Objects. Object One by itself, has four separate sections. These sections all allege various ways in which all Defendants defrauded the United

States presumably in violation of 18 U.S.C. § 371. Object Two only charges Defendant Eury[4] with a conspiracy. Specifically, Object Two charges Defendant Eury with a conspiracy to violate 8 U.S.C. § 1324(a)(1)(A)(iv) by encouraging and inducing aliens to come, enter and reside in the United States, in knowing and in reckless disregard of the fact that it was in violation of federal law. Object Three, also only implicates Defendant Eury, in that it charges him with conspiring to commit visa fraud in violation of 18 U.S.C. § 1546. Object Four, again also only implicating Defendant Eury, charges him with conspiring to commit money laundering violations in violation of 18 U.S.C. §§ 1956(h) and 1957. Then, in the last paragraph of Count One, the Indictment states that all of the overt acts, which the Objects are based on, were *all* in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) and 18 U.S.C. §§ 371 and 2.

At the hearing, however, the Government represented that because Object One does not implicate any violations under Title 8, and because Object One is the only Object charging Defendant White, Defendant White cannot be convicted under 8 U.S.C. § 1324(a)(1)(A)(v)(I). This representation was made despite the wording of the last paragraph of Count One, which does not qualify what acts or Objects contained in Count One were in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). According to the Government, only Defendant Eury, may be convicted under 8 U.S.C. § 1324(a)(1)(A)(v)(I) because he is the only Defendant implicated in an Object—Object Two—which concerns a violation of Title 8. Furthermore, the Government acknowledged that because only Defendant Eury was implicated in Objects Two through Four, Defendant White generally could not be convicted as to those Objects, regardless of whether

---

[4] Objects Two through Four also name the unindicted co-conspirator S.E.F.

13

Objects Two through Four implicate violations of 8 U.S.C. § 1324(a)(1)(A)(v)(I), 18 U.S.C. §§ 371, or violations of both statutes. Thus, it appears on the face of the Indictment, that at least two conspiracies exist merely by the way Count One is presented. Specifically, it appears that there is one conspiracy in Object One between all Defendants to defraud the United States in violation of 18 U.S.C. § 371, for which all Defendants may be convicted. It then appears, that a second conspiracy is being alleged in Objects Two, Three, and Four for actions that are in violation of both 8 U.S.C. § 1324(a)(1)(A)(v)(I) and 18 U.S.C. § 371, for which only Defendant Eury may be convicted.[5]

Now that the Court has determined that Count One is in fact duplicitous, the Court must determine what constitutes an appropriate remedy for this issue. The Government argues that a jury instruction and a particularized verdict form constitutes an appropriate remedy for the issue according to Fourth Circuit case law. Defendants, however, assert that the only remedy that is appropriate based on the circumstances in this case, is dismissal of Count One. After taking into account the circumstances and case law concerning this matter, the Court will find that the appropriate remedy is the dismissal of Count One.

The Government's point is correct in that the Fourth Circuit has stated that "[i]t is black letter law that duplicitous indictments can be cured through appropriate jury instructions."

---

[5]The Court also notes that the Government's attempt to limit the statutory violations under which the various Defendants may be found guilty, runs counter to the law that co-conspirators are liable for the reasonably foreseeable acts of other members of the conspiracy that are done in furtherance of the conspiracy. See United States v. Irvin, 2 F.3d 72, 75 (4th Cir. 1993) ("Under Pinkerton, in order to hold a coconspirator criminally liable for acts of other members of the conspiracy, the act must be 'done in furtherance of the conspiracy' and 'be reasonably foreseen as a necessary or natural consequence of the" conspiracy.').

United States v. Robinson, 627 F.3d 941, 958 (4th Cir. 2010). In Robinson, however, the Fourth Circuit was not evaluating a Motion to Dismiss pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, but instead, the Fourth Circuit was viewing an objection from a defendant that was only made after the trial and after evidence had been presented to the jury. Thus, when a duplicity objection is made after the evidence has been presented, a jury instruction may very well be the appropriate remedy. However, "[h]oping that a jury instruction will remedy a problem that can clearly be solved now, makes no sense." United States v. Marlinga, No. CRIM 04-80372, 2005 WL 513494, at *6 (E.D. Mich. Feb. 28, 2005). Instead, when a court finds that a count is duplicitous prior to trial, "the proper remedy is to dismiss the count or to require the United States to elect which offense it desires to pursue." United States v. Pleasant, 125 F. Supp. 2d 173, 176 (E.D. Va. 2000); see also, Jackson, 926 F. Supp. 2d at 705 (quoting Pleasant as to what constitutes the proper remedy for a duplicitous count found prior to trial).

Under these circumstances, the Court finds that the proper remedy in this situation is to dismiss Count One. First, it should be noted that the Government never requested nor proffered a way in which it could parse out a single offense to pursue if the Court were to find that Count One was duplicitous. Instead, the only remedy the Government offered was for the Court to provide a jury instruction concerning multiple conspiracies. As stated above, however, because this case has not yet gone to trial, a jury instruction is not the proper remedy at this stage of the litigaiton. Second, at the hearing, the Government indicated that it would be possible to re-indict Defendants through separate conspiracy counts. Thus, it appears that

rather than identifying one offense to charge, the Government suggests that it could re-indict the Defendants in separate non-duplicitous conspiracy counts. Rather than the Government choosing which conspiracy theory it will pursue, it would appear that the Government would prefer correcting the error so as to charge both conspiracies. In view of the confusing nature of the Objects of Count One of the Indictment, to the extent the Indictment attempts to charge the Defendants with violations of different conspiracy statutes in the same count, the Court chooses not to re-formulate the Indictment so as to only charge one conspiracy theory. Such an attempt would without a doubt have the unintended effect of broadening or altering the charges in the Indictment, which only a grand jury may endeavor to accomplish. See United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999) ("[O]nly the grand jury may broaden or alter the charges in the indictment.") (citing Stirone v. United States, 361 U.S. 212, 215–16, 80 S. Ct. 270, 4 L. Ed. 2d 252 (1960). Accordingly, the Court will dismiss Count One as duplicitous, without prejudice to allow the Government to re-indict the appropriate Defendants on the same charges in a manner that does not violate the rule against duplicity if the Government so chooses.

   B.  Motion to Compel Production of the Transcript of the Grand Jury Charging Statement

As to the Defendants' Motion to Compel Production of the Transcript of the Grand Jury Charging Statement, the Court will deny this Motion as moot. Defendants seek disclosure of the grand jury charging statement and any colloquies between the government attorneys and the grand jurors only regarding the law governing Count One of the Indictment. Defendants assert that through their Motion to Dismiss Count One of the Indictment, they have shown a

16

particularized need for these materials because Defendants state that only a jury misinstructed on the law could have returned an Indictment containing Count One. The Court, however, has now found that Count One is duplicitous and that Count One will be dismissed. Accordingly, Defendants do not need additional evidence to support their arguments contained in the Motion to Dismiss. Therefore, the Court will deny the Motion to Compel as moot.

C. Remaining Motions

While the Court stated that an Order would be forthcoming as to the Defendants' Motion to Dismiss Count One and Motion to Compel, the Court made specific findings as to the Defendants' Motion to Suppress and Motions to Strike Surplusage from the Indictment at the hearing. During the argument at the hearing concerning Defendants' Motion to Suppress, the Government noted that it did not intend to call witnesses associated solely with the evidence that Defendants' sought to suppress. Accordingly, the Court deemed Defendants' Motion to Suppress as moot. A similar finding was made concerning both Defendant Eury's and Defendant White's Motions to Strike Surplusage from the Indictment. Specifically, the Court found that in the event the Indictment is provided to the jury, any inconsistencies in the Indictment with the testimony provided at trial will be addressed at that time. Accordingly, Defendant Eury's Motion to Strike Surplusage and Defendant White's Motion to Strike Surplusage are denied as moot without prejudice to raising specific objections at the appropriate time during the trial of this matter.

As to Defendants' Motions for Discovery, the Court notes that Defendants chose to not address these Motions at the hearing, stating that the Government has provided voluminous

discovery and there was nothing for the Court to hear as to the Motions for Discovery at that time. Accordingly, Defendants' Motions for Discovery are denied as moot, without prejudice to asserting specific objections at a later time, if such problems with discovery do arise.

III. CONCLUSION

In sum, the Court grants Defendants' Motion to Dismiss Count One of the Second Superseding Indictment [Doc. #63] as to Defendant Eury and Defendant White, finding that Count One is duplicitous and dismissal is the proper remedy. Furthermore, the Court denies as moot Defendants' Motion to Compel Production of the Transcript of the Grand Jury Charging Statement [Doc. #65], as Defendants no longer have any need for such Charging Statement to support their contentions in the Motion to Dismiss.

In confirming the Court's announced findings at the hearing, Defendants' Motion to Suppress [Doc. #66] is denied as moot, Defendant Eury's Motion to Strike Surplusage from the Second Superseding Indictment [Doc. #64] is denied as moot, Defendant White's Motion to Strike Surplusage from the Second Superseding Indictment [Doc. #67] is denied as moot, and Defendants' two Joint Motions for Discovery [Docs. #17 & # 45] are denied as moot.

The parties are reminded that this case is set for trial to start on May 4, 2015, and this Opinion and Order in no way changes the current schedule. Absent the necessity of any further ruling from the Court, this case will proceed as previously announced at the hearing.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Count One of the Second Superseding Indictment [Doc. #63] is hereby GRANTED as to Defendant Eury and Defendant White and that Defendants' Motion to Compel Production of the Transcript of the

Grand Jury Charging Statement [Doc. #65] is hereby DENIED AS MOOT.

IT IS FURTHER ORDERED that Defendants' Motion to Suppress [Doc. #66] is DENIED AS MOOT, Defendant Eury's Motion to Strike Surplusage from the Second Superseding Indictment [Doc. #64] is DENIED AS MOOT, Defendant White's Motion to Strike Surplusage from the Second Superseding Indictment [Doc. #67] is DENIED AS MOOT, and Defendants' two Joint Motions for Discovery [Docs. #17 & # 45] are DENIED AS MOOT.

This, the 23rd day of April, 2015.

_____
United States District Judge